IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WENDY LEWIS,<br>GREGORY ALSTON,<br>ERIC BURTON,<br>JEFFREY GARRETT,<br>OLLIE PINO,<br>NANCY RAMOS, and<br>JASON WILLIAMS,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEW YORK CITY HOUSING<br>AUTHORITY<br><br>    Defendant. | Case No: _____<br><br>(JURY TRIAL DEMANDED) |

## COMPLAINT

### INTRODUCTION

Plaintiffs, by and through their counsel, the law firms of Woodley & McGillivary LLP and Spivak Lipton LLP for their complaint against the New York City Housing Authority ("NYCHA"), hereby state as follows:

### PARTIES

1. Plaintiffs identified in the caption of this Complaint have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint in the attached Appendix. These written consent forms set forth each plaintiff's name and address. The representative plaintiffs are Wendy Lewis, Nancy Ramos, Ollie Pino, Gregory Alston, Jeffrey Garrett, Jason Williams, and Eric Burton. They bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA)

against the defendant on behalf of themselves and all others similarly situated because of defendant's unlawful deprivation of plaintiffs' rights to overtime compensation under the FLSA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

4. Plaintiffs are, and at all times material herein have been, employed by the New York City Housing Authority ("NYCHA") in the position of Caretaker.

5. At all times material herein, representative plaintiff Wendy Lewis has worked as a Caretaker at NYCHA housing development, Gowanus Houses, located at 211 Hoyt St, Brooklyn, NY 11217. At all material times herein, representative plaintiffs Nancy Ramos and Ollie Pino have worked as "floater" Caretakers, assigned to various NYCHA developments throughout the five boroughs of New York City. At all times material herein, representative plaintiff Gregory Alston has worked as a Caretaker at NYCHA housing development, Lincoln Houses, located at 60 E 135th St, New York, NY 10037. At all times material herein, representative plaintiff Jeffrey Garrett has worked as a Caretaker at NYCHA housing development, Kingsborough Houses, located at 154 Kingsborough 1st Walk, Brooklyn, NY 11233. At all times material herein, representative plaintiff Jason Williams has worked as a Caretaker at NYCHA housing development, Jackie Robinson Houses, located at 2120 Lexington Ave, New York, NY 10035. At all times material herein, representative plaintiff Eric Burton has worked as a Caretaker at NYCHA housing development, Walt Whitman Houses, located at 287 Myrtle Avenue, Brooklyn, New York, NY 11205.

2

6. Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendant's willful and unlawful violations of federal law complained of herein.

7. Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

8. Defendant New York City Housing Authority is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). NYCHA is a public benefit corporation organized under the New York public housing laws and is a legally separate entity from the City of New York. N.Y. Pub. Hous. Law §§ 30, 401. The New York City Housing Authority has a principal office and place of business located at 250 Broadway, New York, NY 10007, and may be served with process by serving the General Counsel at the New York City Housing Authority Law Department, 250 Broadway, 9th Floor, New York, NY 10007.

9. NYCHA is charged with providing decent and affordable housing in a safe and secure living environment for over 600,000 low- and moderate-income residents throughout the five boroughs of New York. NYCHA housing developments across the five boroughs provide residential apartments and community programs for New York City's most vulnerable population including seniors and the mobility impaired. To fulfill its mission, NYCHA must preserve its aging housing stock through timely maintenance of its developments.

10. Within the last three years and continuing to date, while employed by defendant as Caretakers, plaintiffs Lewis, Ramos, Pino, Alston, Garrett, Williams, Burton, and other similarly situated Caretakers work to maintain the grounds, buildings and public spaces of New York City

public housing projects. Depending on job assignment, plaintiffs' job duties include some or all of the following: sweeping and mopping public spaces; removing snow and encumbrances; washing windows and walls; lighting and cleaning the incinerators; servicing air pollution and compactor equipment; collecting garbage; cleaning ramps, roofs and canopies; changing light bulbs, including those in lampposts; cleaning grounds and vacant apartments as required; performing general gardening work, including cutting lawns, trimming hedges, transplanting, reseeding and spreading fertilizer and topsoil; checking for elevators that are not working properly; and reporting all housing violations.

11. While working as Caretakers, the representative plaintiffs routinely work over 40 hours a week and do not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a week. From July 1 until the Monday after Labor Day (hereinafter referred to as "the summer months"), Caretakers are scheduled to work 40 hours a week as their regular schedule, with one hour automatically deducted each day for meal periods. In all other months, Caretakers are regularly scheduled to work 42.5 hours per week, with one half hour automatically deducted each day for meal periods. In addition, and as described in further detail below, they frequently work overtime.

12. During the weeks that the plaintiffs worked more than 40 hours performing the work described in paragraph 10 above, the defendant has violated the FLSA in the following ways: (1) failing to pay plaintiffs for all hours worked by failing to compensate plaintiffs for work performed before the official start time of their shifts or after the official end time of their shifts, and by automatically deducting an hour or half hour for meal periods although work was performed during the unpaid meal period; and/or (2) failing to pay plaintiffs for overtime work

4

performed over the 40 hour threshold until more than two pay periods after the work was performed.

13. At all times material herein, all persons who work for NYCHA as Caretakers are similarly situated because they perform job duties similar to those described in paragraph 10 above, work hours similar to those described in paragraph 11 above, and because they are subject to the defendant's pay practices described in paragraph 12 above.

*Failure to Compensate Plaintiffs for All Hours Worked*

14. Defendant fails to compensate plaintiffs for work hours that are performed before and after their shifts, and for work hours performed during plaintiffs' unpaid meal periods.

15. Defendant captures employees' work time through the timekeeping system, Kronos. Kronos records the uncompensated pre-shift work time and post-shift work time performed by the plaintiffs in increments of one minute. Once defendant produces the Kronos timekeeping records for each of the plaintiffs, the precise amount of recorded uncompensated pre-shift and post-shift work time for each plaintiff can be determined on a daily basis.

16. Plaintiff Caretakers use a card to swipe through a machine when they clock in and out. When Kronos is down, or when a Caretaker forgets or loses his or her card, he or she must write down the time to input later using alternate timesheets. When this happens, supervisors tell plaintiff Caretakers to input only their regularly scheduled shift start and end times and not the true and correct start and end times.

17. For example, representative plaintiff Wendy Lewis is a Caretaker assigned to Gowanus Houses and works over 40 hours per week (excluding her unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Lewis works over 40 hours in a workweek performing the job duties

5

described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during her unpaid meal periods. During the summer months, plaintiff Lewis is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, she is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

18. Approximately 4 - 5 times per week plaintiff Lewis arrives approximately 20 minutes or more before the start of her shift and begins working. During this time, plaintiff Lewis changes into her uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. She also prepares for roll call, receives her first assignments for the day and gathers her equipment and supplies. On occasion, plaintiff Lewis continues working for approximately 20 to 30 minutes after the end of her shift. During this time, she performs the job duties described in paragraph 10, changes out of her uniform, and returns her equipment and supplies. When plaintiff Lewis must work past the end of her shift, it is because she has received an assignment near the end of her shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping system will show plaintiff Lewis' precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Lewis to work through all or a portion of her meal period approximately 4 to 5 times per week, even though the entire period is unpaid. When plaintiff Lewis performs these work activities prior to the official start time of her shift or after the official

end time of her shift, and during her meal periods, it causes her to work in excess of 40 hours per week, for which she is not properly compensated.

19. For example, representative plaintiff Nancy Ramos is a Caretaker who works at various NYCHA developments throughout Queens and Staten Island. As a floater, she receives the next day's work assignment location on the day before that workday. She works over 40 hours per week (excluding her unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Ramos works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during her unpaid meal periods. During the summer months, plaintiff Ramos is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, she is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

20. Approximately 4 to 5 times per week plaintiff Ramos arrives approximately 10 to 20 minutes or more before the start of her shift and begins working. During this time, plaintiff Ramos changes into her uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. She also prepares for roll call, receives her first assignments for the day and gathers her equipment and supplies. On occasion, plaintiff Ramos continues working for approximately 20 to 30 minutes after the end of her shift. During this time, she performs the job duties described in paragraph 10, changes out of her uniform, and returns her equipment and supplies. When plaintiff Ramos must work past the end of her shift, it is because she has received an assignment near the end of her shift that must be completed that day. In addition, because

7

NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping system will show plaintiff Ramos' precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Ramos to work through all or a portion of her meal period approximately 4 to 5 times per week, even though the entire period is unpaid. When plaintiff Ramos performs these unpaid work activities prior to the official start time of her shift or after the official end time of her shift, and during her meal periods, it causes her to work in excess of 40 hours per week, for which she is not properly compensated.

21. For example, representative plaintiff Ollie Pino is a Caretaker who works at various NYCHA developments throughout all five boroughs. As a floater, he receives the next day's work assignment location on the day before that workday. He works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Pino works over 40 hours in a workweek performing the job duties described in paragraph10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Pino is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

22. Approximately 4 to 5 times per week plaintiff Pino arrives approximately 10 to 20 minutes or more before the start of his shift and begins working. During this time, plaintiff Pino

changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day and gathers his tools and materials. Approximately 2 to 3 times per week, plaintiff Pino continues working for approximately 10 minutes after the end of his shift. During this time, he performs the job duties described in paragraph 10, changes out of his uniform, and returns his tools and materials. When plaintiff Pino must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping system will show plaintiff Pino's precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Pino to work through all or a portion of his meal period approximately 2 - 3 times per week, even though the entire period is unpaid. When plaintiff Pino performs these work activities prior to the official start time of his shift or after the official end time of his shift, and during his meal periods, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

23. For example, representative plaintiff Gregory Alston, is a Caretaker assigned to Lincoln Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Alston works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate

9

plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Alston is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

24. Approximately 4 to 5 times per week plaintiff Alston arrives approximately 10 to 20 minutes or more before the start of his shift and begins working. During this time, plaintiff Alston changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day and gathers his equipment and supplies. Approximately 2 times per week, plaintiff Alston continues working for approximately 10 to 20 minutes after the end of his shift. During this time, he performs the job duties described in paragraph 10, changes out of his uniform, and returns his equipment and supplies. When plaintiff Alston must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping system will show plaintiff Alston's precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Alston to work through all or a portion of his meal period approximately 2 to 3 times per week, even though the entire period is unpaid. When plaintiff Alston performs these work activities prior to the official start time of his shift or after the official end time of his shift, and during his meal periods, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

25. For example, representative plaintiff Jeffrey Garrett, is a Caretaker assigned to Kingsborough Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Garrett works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Garrett is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

26. Approximately 4 to 5 times per week plaintiff Garrett arrives approximately 10 to 20 minutes or more before the start of his shift and begins working. During this time, plaintiff Garrett changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day and gathers his equipment and supplies. On occasion, plaintiff Garrett continues working for approximately 20 to 30 minutes after the end of his shift. During this time, he performs the job duties described in paragraph 10, changes out of his uniform, and returns his equipment and supplies. When plaintiff Garrett must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping

system will show plaintiff Garrett's precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Garrett to work through all or a portion of his meal period approximately 1 to 2 times per week, even though the entire period is unpaid. When plaintiff Garrett performs these work activities prior to the official start time of his shift or after the official end time of his shift, and during her meal periods, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

27. For example, representative plaintiff Jason Williams, is a Caretaker assigned to Jackie Robinson Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Williams works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Williams is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

28. Approximately 4 to 5 times per week plaintiff Williams arrives approximately 10 to 20 minutes or more before the start of his shift and begins working. During this time, plaintiff Williams changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day and gathers his equipment and supplies. Approximately 2 to 3 times per week, plaintiff Williams continues working for approximately 20 to 30 minutes after the end of his shift. During this time,

12

he performs the job duties described in paragraph 10, changes out of his uniform, and returns his equipment and supplies. When plaintiff Williams must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping system will show plaintiff Williams' precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Williams to work through all or a portion of his meal period approximately 3 to 4 times per week, even though the entire period is unpaid. When plaintiff Williams performs these work activities prior to the official start time of his shift or after the official end time of his shift, and during his meal periods, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

29. For example, representative plaintiff Eric Burton, is a Caretaker assigned to Walt Whitman Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Burton works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Burton is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

13

30. Approximately 4 to 5 times per week plaintiff Burton arrives approximately 10 to 20 minutes or more before the start of his shift and begins working. During this time, plaintiff Burton changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, receives his first assignments for the day and gathers his equipment and supplies. Approximately 2 to 3 times per week, plaintiff Burton continues working for approximately 10 minutes after the end of his shift. During this time, he performs the job duties described in paragraph 10, changes out of his uniform, and returns his equipment and supplies. When plaintiff Burton must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. In addition, because NYCHA policy does not permit employees to wear their uniform home after the end of the shift, employees, on a daily basis, change out of their uniform at or a few minutes after the end of their scheduled shift. Upon information and belief, records maintained in the Kronos timekeeping system will show plaintiff Burton's precise amount of pre-shift and post-shift recorded unpaid work time. The large volume of work also causes plaintiff Burton to work through all or a portion of his meal period approximately 4 to 5 times per week, even though the entire period is unpaid. When plaintiff Burton performs these work activities prior to the official start time of his shift or after the official end time of his shift, and during his meal periods, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

31. The defendant knew or should have known plaintiffs perform the work described above because: plaintiffs must consistently perform work outside of their scheduled shifts to complete their assigned duties; plaintiffs' supervisors witness plaintiffs working outside their scheduled shifts; defendant is aware of the staffing requirements and volume of work that must be

14

completed; and plaintiffs' hours are captured on defendant's timekeeping system, Kronos, in one minute increments.

32. The amount of uncompensated pre- and post-shift time each plaintiff Caretaker has worked in excess of 40 hours a week can be determined through an analysis of defendant's own records. This is true for both the representative plaintiffs and all of the other current and former employees of defendant employed during the past three years in the position of Caretaker at NYCHA.

*Late Payment of Overtime Worked*

33. When plaintiffs work beyond 40 hours in a workweek and are paid for overtime compensation (e.g., when they work an extra shift, or more than several hours beyond their scheduled shift), defendant delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours. The delay in payment is caused by defendant's managerial staff's failure to transmit purportedly necessary information to payroll, or because defendant simply does not want to incur the cost for budgetary reasons in that particular financial quarter, or for other reasons that are unrelated to defendant's ability to determine the amount of overtime compensation that is owed to the plaintiffs. For example, Plaintiff Alston worked 3 hours of pre-approved overtime in November 2016 and, as of the filing of this complaint, has not been paid for it. Similarly, Plaintiff Pino worked pre-approved overtime in September-October 2016, and it took approximately 5 weeks to be paid for the overtime.

34. Similar to the representative plaintiff Caretakers identified above, each of the other potential putative plaintiff Caretakers are paid for overtime more than two pay periods after the plaintiffs worked and earned the overtime compensation.

15

35. The precise number of times a plaintiff Caretaker has been paid for overtime more than two pay periods after he or she worked and earned overtime compensation, and the precise amount of overtime compensation that was delayed in in each instance can be found in work and pay records for the plaintiffs and all others similarly situated, which are in the exclusive possession, custody and control of defendant.

36. In addition, plaintiffs are eligible to receive premium payments in addition to their hourly pay (e.g., shift differential for hours worked outside regularly scheduled hours and supper money when Caretakers work more than 2.5 hours beyond their regular shift) and plaintiffs believe that these are not included in the rate at which overtime is paid. Defendant's payroll records will reveal the extent to which this violation of the FLSA occurs.

**COUNT I**

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK AND FAILURE TO PAY OVERTIME AT ONE AND ONE-HALF TIMES PLAINTIFFS' REGULAR RATES OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA**

37. Plaintiffs hereby incorporate by reference paragraphs 1 through 36 in their entirety and restate them herein.

38. At all times material herein, during those workweeks in which the plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed work activities without compensation before the start of their shifts and after their shifts, and also during their unpaid meal periods. Accordingly, as a result of these pay practices, defendant has failed to provide plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

39. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of forty hours per week.

40. Defendant has failed to comply with the overtime pay requirements of the FLSA in the manner outlined herein by failing to compensate plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, during their uncompensated meal periods and after the official end time of their shifts.

41. In addition, the rate at which overtime has been paid has not included all premiums (e.g., shift differential for hours worked outside regularly scheduled hours and supper money when Caretakers work more than 2.5 hours beyond their regular shift) the plaintiffs are eligible to receive as required under Section 207(a) of the FLSA.

42. As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs and all others similarly situated an amount that has not yet been precisely determined.

43. The employment and work records for the plaintiffs are in the exclusive possession, custody and control of the defendant and its public agencies.

44. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

45. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

46. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR EVEN MONTHS AFTER THE OVERTIME HAS BEEN WORKED

47. Plaintiffs hereby incorporate by reference paragraphs 1 to 46 in their entirety and restate them herein.

48. The FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the Act may not be delayed except as reasonably necessary to compute the amount owed and in no event shall such payments be delayed beyond the next pay day after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying plaintiffs' overtime payments for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute plaintiffs' overtime pay.

49. Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

50. As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined.

51. The employment and work records for the plaintiffs and all others similarly situated are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a).

52. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

53. Pursuant to 29 U.S.C. § 216(b), plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

54. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs, and all those similarly situated, of his and her rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs, and all others similarly situated, are entitled;

(c) Award plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(d) Award plaintiffs and all others similarly situated interest on their unpaid compensation;

(e) Award plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.


Dated: New York, NY
      January 13, 2017

Respectfully submitted,

*/s/ Molly A. Elkin*
Gregory K. McGillivary
Molly A. Elkin
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855

*/s/ Hope Pordy*
Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100
Fax: (212) 765-8954